**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **NATHAN COLVETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:24-cv-677-BL-CWB** |
| | ) | |
| **FRANK BISIGNANO,**[1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.     Introduction and Administrative Proceedings**

Nathan Colvett ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act and an application for Supplemental Security Income under Title XVI of the Social Security Act—alleging disability onset as of April 3, 2022 due to back injury, fibromyalgia, liver problems, mental conditions, and hives from stress. (Tr. 10, 78-80, 91).[2] Plaintiff's claims were denied at the initial level on March 14, 2023 and again after reconsideration on August 22, 2023. (Tr. 10, 78-79, 89, 100, 102, 114, 126, 127, 129, 134, 146, 150). Plaintiff then requested *de novo* review by an administrative law judge ("ALJ"). (Tr. 10, 153). The ALJ subsequently heard the case on January 25, 2024 (Tr. 10, 50-77), at which time testimony was given by Plaintiff (Tr. 54-72) and by a vocational expert (Tr. 72-76). The ALJ took the matter under advisement and issued a written decision on May 20, 2024 that found Plaintiff not disabled. (Tr. 10-29).

---

[1]   Frank Bisignano became Commissioner for the Social Security Administration on or about May 7, 2025 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]   References to pages in the transcript are denoted by the abbreviation "Tr."

1

The ALJ's written decision contained the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2025.

2. The claimant has not engaged in substantial gainful activity since April 3, 2022, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: generalized anxiety disorder (GAD) with insomnia; mood disorder; adjustment disorder with anxiety and depressed mood; lumbar spondylosis with disc bulge with stenosis and foraminal narrowing; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could occasionally climb ramps and stairs. He could never climb ladders, ropes, or scaffolds. He could occasionally stoop, kneel, crouch, crawl, and balance. The claimant must avoid all exposure to workplace hazards, such as dangerous, moving machinery and unprotected heights. The claimant is limited to unskilled work activity, defined as simple, routine tasks, involving no more than simple, short instructions, making simple work-related decisions with few workplace changes, and routine supervision. The claimant could have no more than occasional interaction with coworkers and the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 5, 1985, and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 3, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12, 14, 15, 27, 28, 29).  On August 29, 2024, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to remand the case for further proceedings.  (Doc. 11 at p. 15).  Pursuant to 28 U.S.C. § 636, this appeal has been referred to the Magistrate Judge for consideration and disposition or recommendation on all pretrial matters.  (Doc. 17).  The Magistrate Judge now finds that the case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) in that Plaintiff's supporting brief (Doc. 11) will be construed as a motion for summary judgment and the Commissioner's opposition brief (Doc. 15) was be construed as a competing motion for summary judgment.  Upon consideration of the parties' respective submissions, the relevant law, and the record as a whole, the Magistrate Judge concludes that Plaintiff's motion for summary judgment should be denied, that the Commissioner's motion for summary judgment should be granted, and that the final decision should be affirmed.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but

less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Reversal is not warranted simply because the court itself would have reached a different result. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] In making a disability determination, the ALJ employs a five-step sequential evaluation process:

(1) Is the person presently unemployed?

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

4

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). *See also* 20 C.F.R. §§ 404.1520 & 416.920.[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who then must show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience

---

[4] Because the same sequence applies in both, cases arising under Title XVI are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

### III. Issue on Appeal

Plaintiff raises one issue on appeal: whether the ALJ properly evaluated the prior administrative medical findings of the state agency psychological consultant.

### IV. Discussion

Plaintiff contends that the ALJ failed to properly evaluate the prior administrative medical findings of the state agency psychological consultant, Yamir Laboy, Psy.D, whose opinion the ALJ found "partially persuasive." (Doc. 11 at p. 9). Plaintiff argues that the ALJ failed to incorporate certain limitations found by the psychological consultant into Plaintiff's RFC assessment or explain why the limitations were omitted from the RFC assessment. (*Id*. at pp. 9-14). In response, the Commissioner contends that the ALJ properly considered the "paragraph B" criteria—finding that Plaintiff had no more than moderate limitations in the four broad functional areas—and that the ALJ properly accounted for the findings in assessing Plaintiff's RFC. (Doc. 15 at pp. 6-7). The Commissioner further contends that the ALJ was under no obligation to accept every potential limitation noted in the prior administrative findings and that the limitations included in the RFC are consistent with the record. (*Id*.).

Because Plaintiff's claims were filed on April 25, 2022 (Tr. 10), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The revised regulations no longer use the phrase "treating source" but instead use "your medical source(s)." *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309, *5 (N.D. Ala. July 22, 2021). For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, a requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(b)). Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618, *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, "[the agency] will consider those medical opinions or prior administrative medical findings" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c). "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency."

7

20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296, *4 (M.D. Fla. Apr. 14, 2022); *Nix*, 2021 WL 3089309 at *6 ("The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.") (citing 20 C.F.R. § 404.1520c(a)-(c)); *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) ("[The agency] will articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record."). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156, *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050, *3 (M.D. Ala. June 23, 2022). Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"'[W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s),' the agency 'will articulate how [it] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis,'" and "the ALJ is 'not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually.'" *Joseph D. v. Comm'r, Soc. Sec. Admin.*, No. 1:22-CV-152, 2023 WL 12148409, *8 (N.D. Ga. Mar. 16, 2023) (citing 20 C.F.R. §§ 404.1520c(b)(1) [and 416.920c(b)(1)]); *Davis v. Comm'r of Soc. Sec.*, No. 22-81728-CIV, 2024 WL 1183451, *10 (S.D. Fla. Jan. 17, 2024), *aff'd*, No. 24-10771, 2025 WL 1123853

(11th Cir. Apr. 16, 2025) ("On its face, [20 C.F.R. § 404.1520c(b)(1)] applies when one medical source provides multiple opinions," and "[i]t is clear that this regulation cannot be relied on by the Commissioner to permit an ALJ to group together opinions from multiple medical sources in a single analysis."). Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ... Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218, *9 (M.D. Fla. Sept. 20, 2021) (citations omitted); *see also Moore v. Kijakazi*, No. 8:23-CV-206, 2023 WL 8187216, *4 (M.D. Fla. Nov. 27, 2023) ("[A] 'logical bridge' simply means that 'an ALJ must articulate at some minimum level, her analysis of the evidence.' Ultimately, this requirement does not alter the substantial evidence standard.") (citations omitted); *Weidlich v. Comm'r of Soc. Sec.*, No. 22-13309, 2023 WL 8015753, *2 (11th Cir. Nov. 20, 2023) (An "ALJ must explain and address any conflicts between the RFC and medical opinions.").

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a), 416.945(a) ("Your residual functional capacity is the most you can still do despite your limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports

a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036, *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646, *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted). And "[i]t is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed. *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted). All that is required is that "the ALJ state with clarity his reasons for his decision." *Sturdivant v. Soc. Sec. Admin., Comm'r*, No. 22-13952, 2023 WL 3526609, *4 (11th Cir. May 18, 2023). Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532, *4 (S.D. Ala. Mar. 9, 2022).

10

Plaintiff argues that although the ALJ essentially found Dr. Laboy's opinion to be "fully persuasive" the ALJ did not incorporate all of Dr. Laboy's limitations into the RFC or explain why they were not included. (Doc. 11 at pp. 9-10) (citing Tr. 26, 112-13). Specifically, Plaintiff argues that the ALJ failed to include Dr. Laboy's opinion that "a well-spaced work environment would be best for maximum concentration," that Plaintiff "would likely miss 1-2 days/month due to psych symptoms," that "[c]ontact with the public should be infrequent and non-intensive," and that "[s]upervision should be tactful and constructive and non-threatening." (*Id*.).

When a claimant has presented a colorable claim of mental impairments, the ALJ is required to complete a Psychiatric Review Technique Form ("PRT") to evaluate the severity of the mental impairments. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); 20 C.F.R. §§ 404.1520a, 416.920a. Applying the PRT, the ALJ must rate how a claimant's mental impairments impact four broad functional areas known as the "paragraph B criteria": "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324 (11th Cir. 2021). In rating the degree of limitation in each of those areas, the ALJ utilizes the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). "The ALJ must incorporate these results into the findings and conclusions." *Burns v. Comm'r, Soc. Sec. Admin.*, No. 22-11181, 2023 WL 5607883, *2 (11th Cir. Aug. 30, 2023); *Enriquez v. O'Malley*, No. 8:23-CV-0374, 2024 WL 533150, *3 (M.D. Fla. Jan. 24, 2024), *report and recommendation adopted*, No. 8:23-CV-374, 2024 WL 519764 (M.D. Fla. Feb. 9, 2024) ("[T]he ALJ incorporates the results of the PRT into the findings at steps four and five of the sequential evaluation process."); 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). "The decision must show the significant history,

including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of mental impairment(s)" and "must include a specific finding as to the degree of limitation in each of the functional areas described [above]." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

"The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four." *Buckwalter*, 5 F.4th at 1325; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). "To find the presence of a listing-level mental impairment, the ALJ must find that a claimant has an 'extreme' limitation in one of the four functional areas or a 'marked' limitation in two." *Id*. A "mild" limitation indicates that a claimant's functioning is "slightly limited," whereas a "moderate limitation indicates that a claimant's functioning is "fair." *Id*.; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(b), (c). The ALJ considers all of the relevant medical and non-medical evidence in evaluating a claimant's mental disorder, including information about the claimant's daily activities at home and in the community. *Id*.; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(3)(a)-(b). "The ALJ is required to incorporate the results of the special technique into her findings and conclusions," but the technique "is separate from the ALJ's evaluation of the claimant's RFC assessment, the latter of which is an assessment of the claimant's ability to do work despite his impairments. The mental RFC assessment is a more detailed assessment of the claimant's functionality." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (internal citations omitted). "And at step five in the sequential analysis, an ALJ must account—explicitly or implicitly—for any moderate limitations in one or more of these domains when soliciting opinion testimony from a vocational expert, or the ALJ must indicate in the decision that the evidence otherwise supports the RFC that underlies the expert's opinions." *Gibson v.*

*Comm'r of Soc. Sec.*, No. 2:23-CV-154, 2024 WL 1231313, \*7 (M.D. Fla. Mar. 22, 2024) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011)); *Buckwalter*, 5 F.4th at 1325 ("[T]hough the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's moderate limitation in the area of concentration, persistence, or pace in a hypothetical posed to the VE.").

Dr. Laboy, in considering the "paragraph B" criteria pursuant to the PRT at the reconsideration review level, found that Plaintiff had moderate limitations in the areas of understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace, and "mild" limitation in adapting or managing oneself. (Tr. 14-15, 26, 108, 120). The ALJ, however, rated Plaintiff as having "moderate" limitations in all of the "paragraph B" criteria. (Tr. 14-15). As to "understanding, remembering, or applying information," the ALJ noted that in the Function Report Plaintiff stated that he was able to take care of pets, prepare simple meals, and do laundry, that he was able to drive a car, go out alone, shop for food in stores, and count change, and that he was able to follow written and spoken instructions. (Tr. 14, 266, 269-71). The ALJ also noted that Plaintiff was able to follow directions at most office visits as reflected in the medical records. (Tr. 14). With regard to "interacting with others," the ALJ noted that Plaintiff stated in the Function Report that he had some irritation between himself and family members but that he got along "okay" with authority figures. (Tr. 15, 270-71). The ALJ further observed that the medical records demonstrated that Plaintiff interacted within normal social parameters at most office visits. (Tr. 15). With regard to "concentrating, persisting, or maintaining pace," the ALJ, citing Plaintiff's Function Report, noted that Plaintiff was able to take care of pets, prepare simple meals, and do laundry, that he was able to drive a car, go out alone, shop for food in stores, and count change, and that he was able to

13

follow written and spoken instructions.  (Tr. 15, 266, 269-71).  The ALJ also observed that the medical records showed that Plaintiff was able to follow lines of questioning at most office visits.  (Tr. 15).  As for "adapting or managing oneself," the ALJ noted that the medical records reflected that Plaintiff presented with adequate hygiene and grooming at most office visits and that Plaintiff stated in his Function Report that he does not deal with stress or change in routine well.  (Tr. 15, 272).  However, the ALJ found that Plaintiff's wide range of activities of daily living suggested no more than moderate restriction in this area.  (Tr. 15).  The ALJ then explained as follows:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 15).  *See* 20 C.F.R. §§ 404.1520(a)(4), 404.1520a(b)-(d); 416.920(a)(4), 416.920a(b)-(d).

In assessing Plaintiff's mental RFC, Dr. Laboy opined that Plaintiff "would be expected to understand, remember, and carry out short simple instructions and tasks but would likely have difficulty with more detailed tasks and instructions."  (Tr. 26, 112, 124).  As to sustained concentration and persistence capacities and/or limitations, Dr. Laboy opined that Plaintiff "would likely have trouble with more detailed tasks and instructions," "would be expected to maintain attention and concentration for 2 hours with all customary rest breaks," and "would likely miss 1-2 days/month due to psych symptoms."  (Tr. 26, 112, 124).  Additionally, Dr. Laboy believed that a "well-spaced work environment would be best for maximum concentration."  (Tr. 26, 112, 124).  With regard to social interaction, Dr. Laboy opined that "[c]ontact with the public should be infrequent and non-intensive," and that "[s]upervision should be tactful and constructive and non-threatening."  (Tr. 26, 113, 125).  Lastly, as to adaptation limitations, Dr. Laboy opined that

14

"[c]hanges in the workplace should be infrequent and gradually introduced." (Tr. 26, 113, 125).

> The ALJ found Dr. Laboy's opinion "partially persuasive":
>
> The opinion from Dr. Laboy, Psy.D., is partially persuasive (6A and 7A). This opinion is persuasive insofar as it supports moderate restrictions in most of the paragraph B criteria because this conclusion has support in the overall medical evidence, and it is consistent with the record as a whole. Regarding mild limitation in ability for adaptation, this part of the opinion is less persuasive because the overall record supports moderate restriction in all of the B criteria.

(Tr. 26). In assessing the mental treatment records, the ALJ noted that in December 2021, Plaintiff reported that his symptoms improved on medications. (Tr. 16, 443). Mental examination records from June 9, 2022 showed that Plaintiff's speech was normal, his behavior was cooperative, his mood was frustrated and anxious, his affect was full and congruent, his perception was within normal limits, he had no paranoia or delusions, his thought processes were logical and coherent, his associations were intact, his insight and judgment were intact, he was able to follow and understand instructions, his attention and concentration were alert and fair, he was alert and oriented, his recent and remote memory was intact, and his fund of knowledge was intact. (Tr. 17, 434-35). The ALJ noted the same findings from Plaintiff's mental status examinations on August 16, 2022 and October 17, 2022. (Tr. 18, 431, 549-50). The ALJ further noted a mental status examination from February 27, 2023, which reflected that Plaintiff's thought process was linear and goal-oriented without loosening of associations or flight of ideas, that his thought content indicated extreme worry and fleeting persecutory delusions without conviction with no intent or plan, that he denied auditory and visual hallucinations, that he was not responding to internal stimuli, that there was no evidence of illusions, that his attention and concentration were intact, that he displayed good short-term memory and good long-term memory by interview, that he had normal fund of knowledge for education level, that his insight was fair, that his

15

judgment was good, and that his diagnoses were unspecified mood disorder, generalized anxiety disorder, and adjustment disorder with mixed anxiety and depressed mood.  (Tr. 20, 619).

As to considering Plaintiff's subjective statements, the ALJ concluded that they were inconsistent with the record as a whole, citing that Plaintiff had described activities of daily living that were not limited to the extent one would expect given the complaints of disabling symptoms and limitations.  (Tr. 23).  The ALJ noted that Plaintiff stated in a Function Report that he was able to take care of pets, prepare simple meals, and do laundry, that he was able to drive a car, go out alone, shop for food in stores, and count change, and that he was able to follow written and spoken instructions.  (Tr. 23-24, 266, 269-71).  With respect to Plaintiff's statements about working, the ALJ stated:

> The claimant has made statements about working after the alleged onset date. There are no earnings reported after the alleged onset date, according to recent earnings queries (Exhibit 4D and 6D).  However, on March 29, 2023, treatment notes from one provider stated the claimant's phone number at the time was "obviously a work phone" (19F/1).  Additionally, on September 20, 2023, the claimant stated he had been "working outside" recently when the heat index was "over 110 that day" (21F/9).  First, it seems the claimant has failed to report the earnings from this work activity.  Moreover, the work activity after the alleged onset date supports at least a light residual functional capacity.

(Tr. 24, 220-22, 224, 879, 912).

The ALJ also observed that Plaintiff was not cooperative or compliant with treatment— noting that Plaintiff stated on August 8, 2023 that he had taken himself off of most medications and on November 9, 2023 that he was "very hesitant to take any daily medications" and had "stopped all pain meds."  (Tr. 24, 908, 916).  The ALJ further observed that Plaintiff had been dismissed from multiple mental health clinics without explanation.  (Tr. 24).  And the ALJ noted regarding Plaintiff's mental health that several mental status examinations were within normal limits and that Plaintiff was noted to be anxious at others.  (Tr.24, 910-17).

16

In assessing the medical opinions and prior administrative medical findings, the ALJ stated that "the undersigned does not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from any medical sources" (Tr. 24) and concluded as follows:

> Based on the foregoing, the undersigned finds the claimant's impairments and related symptoms limit him to performing the above residual functional capacity assessment, which is supported by the objective medical evidence, the degree, type, and frequency of treatment, the wide range of activities of daily living, the unexplained work activity after the alleged onset date, the inconsistent statements, the non-adherence to medications, and the overall record as a whole. The undersigned considered all limitations in formulating the residual functional capacity, and the overall record does not support any greater limitations.

(Tr. 27).

As an initial matter, Plaintiff argues that the reason the ALJ found Dr. Laboy's opinion to be only partially persuasive was because the ALJ determined that Dr. Laboy's finding of mild limitations in adaptation was "less persuasive." (Doc. 11 at p. 9). Plaintiff thus argues that "in all other respects, since the doctor found moderate limitations in all other Paragraph B criteria, and since the ALJ expressly found only the adaptation limitations to be unpersuasive, the ALJ found the remainder of the opinion to be 'fully persuasive.'" (*Id*.). This argument, however, is a mischaracterization of what the ALJ actually stated. The ALJ explained that the opinion was "partially persuasive." (Tr. 26). The ALJ specifically stated that the "opinion is persuasive <u>insofar as it supports moderate restrictions in most of the paragraph B criteria</u> because this conclusion has support in the overall medical evidence, and it is consistent with the record as a whole." (Tr. 26) (emphasis added). The ALJ did not state that there was any other portion of the findings that were persuasive. The ALJ certainly never used the phrase "fully persuasive" or other language indicating that Dr. Laboy's opinion was "fully persuasive" in all respects. In fact, the ALJ found the prior administrative findings of Dr. Dennis at the initial review level to be "partially

persuasive" as well. (Tr. 26). The ALJ found that Dr. Dennis's opinion was persuasive regarding moderate limitations in concentration, persistence, and pace and adaptation because those conclusions had support in the medical evidence discussed by the ALJ and were consistent with the other evidence such as the daily activities. (Tr. 26). The ALJ found the opinion "less persuasive" than Dr. Laboy's opinion only because Dr. Dennis at the initial level did not view the subsequently received medical evidence. (Tr. 26).

As to Plaintiff's specific assertions, Plaintiff argues that with respect to "concentration, persistence, and pace" limitations, the ALJ failed in the RFC to account for Dr. Laboy's opinion for a well-spaced work environment and for any absenteeism—despite finding those opinions persuasive—or explain why the limitations were not included in the RFC. (Doc. 11 at pp. 10-11). The Commissioner contends that the ALJ specifically accounted for the moderate limitations in the "paragraph B" criteria in the RFC finding and that the ALJ was under no obligation to accept every potential limitation noted in the prior administrative findings. (Doc. 15 at p. 6).

As stated above, the ALJ—not a doctor—has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945. Accordingly, an ALJ "is not required to base[] [the] RFC on a doctor's opinion." *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190, *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)); *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775, *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal quotation marks omitted). While state agency medical or psychological consultants are considered experts in Social Security disability evaluation, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider

18

this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate." 20 C.F.R. § 404.1513a(b)(1); 20 C.F.R. 416.913a(b)(1). The regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive." *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084, *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775 at *3 ("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate."); *see also Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443, *9 n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases). Nor is an ALJ "compelled to 'specifically refer to every piece of evidence in his decision.'" *Id*. at *9 (citation omitted).

Although the ALJ found Dr. Laboy's opinion to be "partially" persuasive, the ALJ was under no obligation to adopt every part of the opinion. "The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive." *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404, *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the RFC rests with the ALJ."); *Tolbert*, 2022 WL 4591646 at *2 ("There is no requirement that an ALJ include every limitation from

a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, No. CV 321-066, 2022 WL 4000719, *5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*, No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050 at *3.

Dr. Laboy opined that a "well-spaced work environment <u>would be best</u> for maximum concentration." (Tr. 112, 124) (emphasis added). The opinion, however, does not state that the limitation was required—only that it was suggested. Therefore, the ALJ did not err by leaving out the limitation. *See Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 796 (11th Cir. 2019) (finding that the ALJ did not err by omitting limitation that plaintiff would function "best" in a "well-spaced work setting" after giving state agency opinion "great weight," because the opinion "did not say that she required a well-spaced work setting to function at all"). Plaintiff argues that Dr. Laboy's use of the phrase "for maximum concentration" was a "qualifier," which amounted to a requirement and rendered "would be best" as "semantics." (Doc. 11 at pp. 11-12). This argument defies a plain reading of the statement. Accordingly, because Dr. Laboy's opinion that a "well-spaced work environment would be best for maximum concentration" was not a requirement, the ALJ did not err in omitting it from the RFC. *See Vilches*, 2022 WL 11455775, at *3 n.2 (finding that doctor's opinion that "a well-spaced work environment would be best for maximum concentration" did not suggest that a well-spaced work environment would be a required work-place limitation for Plaintiff but instead suggested it would be best—that is not mandatory) (citing *Whitten*, *supra*).

Similarly, Dr. Laboy's opinion that Plaintiff "would likely miss 1-2 days/month due to psych symptoms" was speculative, and the ALJ therefore was not required to give any weight to it. *See Harris v. Kijakazi*, No. 2:21-CV-256, 2023 WL 2250474, *6 (M.D. Ala. Feb. 27, 2023) (finding that the state agency psychological consultant's opinion that plaintiff "'may' miss '1-2 days of work per month ... due to [his] mental condition'" was speculative and thus the ALJ was not required to give any weight to it); *Charles M. v. Comm'r, Soc. Sec. Admin.*, No. 3:24-CV-00005, 2025 WL 3263882, *16 (N.D. Ga. Mar. 17, 2025) (same); *see also Gilbreath v. Comm'r of Soc. Sec. Admin.*, No. 2:20-CV-00487, 2021 WL 2779454, *4 (N.D. Ala. July 2, 2021) (citations omitted) (finding that state agency psychologist's opinion that plaintiff "may be expected to miss 1 or 2 days of work per month" was "speculative" and "ALJ did not have to give any weight to the opinion"); *Bradley v. O'Malley*, No. 1:22-CV-01312, 2024 WL 665781, *5 (N.D. Ala. Feb. 16, 2024) (noting that statements that included qualifying language such as "likely would have difficulty" were not requirements and that the ALJ was not required to give weight to these statements). Moreover, Plaintiff does not cite to any treatment records suggesting that he would miss 1 or 2 days of work per month due to "psych symptoms." *Harris*, 2023 WL 2250474 at *6 ("Notably, Harris fails to point to any treatment records that suggest he would miss 1 or 2 days of work per month due to his mental issues."). Accordingly, Plaintiff's argument fails. *See Ellison*, 355 F.3d at 1276 (stating that a plaintiff "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim").

Plaintiff next argues that the ALJ failed to include Dr. Laboy's limitation that "[c]ontact with the public should be infrequent and non-intensive" or explain why no such limitation was included in the RFC. (Doc. 11 at pp. 13-14). In fashioning the RFC, the ALJ stated, in part, that

Plaintiff "could have no more than occasional interaction with coworkers and the general public." (Tr. 15). Plaintiff, however, argues that while the ALJ included Dr. Laboy's limitation regarding the frequency of the interaction, the limitation to "non-intensive" interaction with the public was a separate and qualitative limitation that the ALJ failed to include in the RFC. (Doc. 11 at p. 13).

The ALJ explicitly stated that he did "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from any medical sources." (Tr. 24). The ALJ further explained that Plaintiff's RFC was "supported by the objective medical evidence, the degree, type, and frequency of treatment, the wide range of activities of daily living, the unexplained work activity after the alleged onset date, the inconsistent statements, the non-adherence to medications, and the overall record as a whole" and that "all limitations in formulating the residual functional capacity" were considered. (Tr. 27). The ALJ stated that Plaintiff had described activities of daily living that were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, noting that Plaintiff was able to take care of pets, prepare simple meals, and do laundry, drive a car, go out alone, shop for food in stores, and count change, and follow written and spoken instructions. (Tr. 23-24, 266, 269-71). In assessing the evidence in relation to Plaintiff's mental impairments, the ALJ noted that Plaintiff interacted within normal social parameters at most office visits. (Tr. 15).[5]

---

[5] "'[I]t is proper to read the ALJ's decision a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses' at multiple points in the decision." *Pariseau v. Comm'r of Soc. Sec.*, No. 2:20-CV-01224, 2022 WL 4277295, *7 n.5 (N.D. Ala. Sept. 15, 2022) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)); *Bradford v. Sec'y of Dep't of Health & Human Servs.*, 803 F.2d 871, 873 (6th Cir. 1986) (explaining that an ALJ's decision should be considered as an "entire opinion").

Thus, the record as a whole reflects that the ALJ properly considered Dr. Laboy's opinion in fashioning Plaintiff's RFC, and "[t]he Eleventh Circuit ... does not take issue with an ALJ's RFC finding that does not mirror persuasive prior administrative medical findings." *Hebert v. O'Malley*, No. 3:23-CV-24008, 2024 WL 4291499, *15 (N.D. Fla. Sept. 25, 2024) (citing *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, *6 (11th Cir. Jan. 10, 2022) (affirming ALJ's RFC finding as supported by substantial evidence even though the ALJ limited claimant to "occasionally interact[ing] with supervisors, coworkers, and the public"—a limitation plaintiff argued was in conflict with persuasive state agency consultants' prior administrative medical findings that indicated claimant could have only "limited and superficial social interaction")). In *Williams v. Saul*, 532 F. Supp. 3d 1226, 1233 (M.D. Ala. 2021), the plaintiff alleged that the ALJ improperly discredited the medical opinions limiting her "to helpful, not threatening, and supportive supervisors" because the ALJ only limited her "to occasional interaction with supervisors and the public" and, in doing so, failed to address the type of interaction that she could have with supervisors. Relying on the Eleventh Circuit's decision in *Shaw v. Astrue*, 392 F. App'x 684 (11th Cir. 2010), the court concluded that the ALJ's failure to specifically address the plaintiff's ability to respond to coworkers and to specifically limit the plaintiff's quality of interaction with her supervisors was not inconsistent with the ALJ's RFC determination that limited the plaintiff to light work, simple routine tasks, and occasional interaction with supervisors and the public. 532 F. Supp. 3d at 1233. *See Shaw*, 392 F. App'x at 686-87 (where the ALJ limited the plaintiff's RFC to "light exertional work, including work with simple instructions and no more than limited public contact" and the plaintiff argued that the ALJ improperly discredited the examining doctor's opinion that the plaintiff "had poor abilities to interact with supervisors or to deal with work stress when making the RFC finding," the

Eleventh Circuit determined that although the ALJ did not specifically address the findings regarding poor functionality in dealing with supervisors or stress, the plaintiff's RFC finding was not inconsistent with those findings).[6]

Moreover, any exclusion of the limitation "non-intensive" was harmless. Here, the VE testified that Plaintiff could perform the jobs of: crimper, DICOT 690.686-026, 1991 WL 678629; garment sorter, DICOT 222.687-014, 1991 WL 672131; and hand packager, DICOT 559.687-074, 1991 WL 683797. According to Appendix B of the DOT, the fifth number of the nine-digit code reflects a job's relationship to people. *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016) (citing Dictionary of Occupational Titles, App. B—Explanation of Data, People, & Things, 1991 WL 688701 (4th ed., rev'd 1991)). "The DOT rates the amount of interaction with people on a scale of 0–8, with 8 representing the lowest possible level of human interaction that exists in the labor force." *Id*. The DOT describes "8 Taking Instructions-Helping" as a need to take instructions as only "[a]ttending to the work assignment instructions or orders of supervisor" with "[n]o immediate response required unless clarification of instructions or orders is needed." *Lane*, 643 F. App'x at 770 n.1 (citing Appendix B of the DOT, 1991 WL 688701). The jobs of crimper, garment sorter, and hand packager are all defined as ones where "Taking Instructions-Helping" is "Not Significant" and the activities of "Hearing" and "Talking" are described in each job as "Not Present - Activity or condition does not exist." *See* DICOT 690.686-026, 1991 WL 678629, DICOT 222.687-014, 1991 WL 672131, and DICOT 559.687-074, 1991 WL 683797. Thus, those jobs do not involve intensive interaction with the public and, therefore, the job descriptions are consistent with having "no more than occasional interaction with coworkers and the general

---

[6] Both the *Shaw* and *Williams* courts further concluded that even if the ALJ failed to specifically address the medical opinions in question, any "error" was harmless. *Shaw*, 392 F. App'x at 687 n.1 and *Williams*, 532 F. Supp. 3d at 1233 n.5.

public." *See Lane*, 643 F. App'x at 768-69 (where the RFC limited plaintiff to low stress work, which included involving no interaction with the public, the court concluded that it did not need to resolve whether the ALJ should have expressly included in the RFC the doctor's limitation on frequent and prolonged contact with supervisors and co-workers, because the capacity required to do the jobs identified by the ALJ was not contrary to the doctor's limitations regarding interaction with supervisors and co-workers and thus, any error was harmless); *Scott C. v. Comm'r of Soc. Sec.*, No. 2:20-cv-00109, 2021 WL 2682276, *4-5 (D. Vt. June 30, 2021) (where the plaintiff argued that the ALJ erred in finding that he could engage in routine and ordinary social interactions with coworkers, supervisors, and the general public in the RFC because the state agency consultants opined that he was limited to engaging in "brief, infrequent, and non-intense interactions with supervisors and coworkers," the court concluded that although the ALJ, who found the opinion of the state agency consultants persuasive but failed to explain why he rejected the more restrictive limitation, erred in failing to explain his rejection of certain elements of the medical opinions that he found persuasive but that such error was harmless because the positions identified by the VE included the level 8 position, which did not require significant social interaction as explained in the DOT); *Lickey v. Kijakazi*, No. 3:22-CV-218, 2023 WL 12031342, *5-6 (N.D.W. Va. July 17, 2023), *report and recommendation adopted*, No. 3:22-CV-218, 2024 WL 5411162 (N.D.W. Va. Nov. 21, 2024) (citing that courts across "the country have consistently rejected arguments based on a missing social interaction limitation in the RFC when the ALJ relies on occupations in step five that accommodate such limited interaction," the court concluded that modifying the RFC from "occasional interaction with coworkers and/or supervisors" to "occasional and brief interaction with coworkers and/or supervisors" would not change the outcome of the ALJ's ultimate finding of disability as any error by the ALJ in excluding

25

"brief" interactions from the RFC and failing to explain the exclusion was harmless to the ultimate finding of disability); *Crisco v. Kijakazi*, No. 1:22CV38, 2023 WL 2142681, *7-9 (M.D.N.C. Feb. 21, 2023) (finding no harmful error when the ALJ erred in not adopting state agency psychologists' restriction to "brief, superficial" contact with coworkers and supervisors because the ALJ found plaintiff could perform garment sorter and retail marker occupations even if the brief and superficial limitations had been included in the RFC); *Wagner v. Berryhill*, No. CV 17-5698, 2018 WL 3956485, *3-4 (C.D. Cal. Aug. 14, 2018) (same); *Ridley G. v. Comm'r of Soc. Sec.*, No. 1:20CV773, 2021 WL 4307507, *8, 13 (N.D.N.Y. Sept. 22, 2021) (deciding that RFC restriction to no interaction or tandem tasks with coworkers harmonizes with jobs with DOT level 8 interaction); *Shorey v. Astrue*, No. 1:11CV414, 2012 WL 3475790, *6 (D. Me. July 13, 2012) (holding that "inclusion of a limitation to occasional, brief, and superficial contact with coworkers and supervisors in the [ALJ]'s hypothetical question would not have excluded" jobs with a DOT "People" rating of 8); *Eldridge v. Berryhill*, No. 16-5289, 2018 WL 1092025, *2 (W.D. Ark. Feb. 28, 2018) (finding jobs categorized by DOT as involving level 8 interaction consistent with restrictions to "limited contact with the general public" and "incidental contact with co-workers"); *Reese v. Saul*, No. 3:18-CV-442, 2020 WL 1312703, *14 (E.D. Tenn. Mar. 19, 2020) ("A social interaction rating of not significant is consistent with limitations to occasional, brief and superficial contact with co-workers, supervisors, and the public.") (citations and internal quotation marks omitted); *Keene v. Kijakazi*, No. 1:21CV289, 2022 WL 6175173, *5-6 (M.D.N.C. Oct. 7, 2022), *report and recommendation adopted*, No. 1:21CV289, 2023 WL 1102603 (M.D.N.C. Jan. 30, 2023) (finding that the ALJ's failure to include limitations in the RFC to accommodate the consultants' restriction to "minimal social interaction" was harmless error because the three jobs the ALJ found plaintiff able to perform

26

contained a "People" rating of 8, which reflected the lowest possible level of human interaction that exists in the labor force); *Wilson v. Saul*, No. 1:19CV1089, 2020 WL 6293132, *4 (M.D.N.C. Oct. 27, 2020) ("[E]ven assuming the ALJ erred here by failing to include additional social limitations in the RFC..., any error would be harmless because the jobs the ALJ concluded that [the p]laintiff could perform do not require significant social interactions.  In fact, the [DOT's] descriptions of the jobs identified by the VE list interaction with 'People' as being 'Not Significant.'"); *Mary G. v. Bisignano*, No. CV 24-1473, 2025 WL 2097423, *4 (D. Md. July 24, 2025) (same).

Lastly, Plaintiff asserts regarding social interaction limitations that although the ALJ found Dr. Laboy's opinion persuasive, the ALJ only included the limitation for routine supervision instead of Dr. Laboy's limitation to tactful, constructive, and non-threatening supervision and that the ALJ did not explain why Dr. Laboy's limitation was not included.  (Doc. 11 at p. 14). Again, for much of the same reasons discussed above in relation to the limitation involving "non-intensive" interaction, this contention fails.  The ALJ noted when discussing the "paragraph B" criteria that Plaintiff "[got] along okay with authority figures" and that he interacted within normal social parameters at most office visits, and the ALJ also cited Plaintiff's wide range of activities of daily living in response to Plaintiff's reporting that he did not deal well with stress.  (Tr. 15, 270-71).  Limiting Plaintiff to "routine supervision" therefore was consistent with the evidence in the record.  Moreover, if there were an error, it would be harmless—as such limitations would not affect the types of jobs that the VE determined that Plaintiff could perform. *Shaw*, 392 F. App'x at 686-87 (failing to address doctor's findings regarding poor functionality in dealing with supervisors or stress was not inconsistent with RFC limiting plaintiff to "light exertional work, including work with simple instructions and no more than limited public

contact"); *Brothers v. Comm'r of Soc. Sec.*, 648 F. App'x 938, 939 (11th Cir. 2016) (where ALJ gave great weight to state psychologist who opined that plaintiff had "some limitation in understanding and remembering detailed instructions, [yet could] sustain attention for two-hour periods" to "complete tasks" with occasional reminders by a supervisor with whom plaintiff might "develop interpersonal problems" but could "maintain basic social interactions" and the ALJ found that plaintiff could work only where no production rate or pace was required, could perform only simple routine tasks, and could work where only occasional interaction with the public and co-workers was required, the court found that the ALJ was not required to refer to supervisors when the RFC assessment and the hypothetical question included a restriction on plaintiff's social interaction in the workplace); *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542 (11th Cir. 2016) (per curiam) (finding moderate limitations in taking criticism from supervisors adequately accounted for in RFC limiting plaintiff to "short, simple, instructions" and "only occasional contact with co-workers and the general public on routine matters*"); Kitchens v. Saul*, No. CV 319-039, 2020 WL 4196186, *3 (S.D. Ga. June 26, 2020), *report and recommendation adopted*, No. CV 319-039, 2020 WL 4194012 (S.D. Ga. July 21, 2020) (same); *Cerrato v. Comm'r of Soc. Sec.*, No. 5:22-CV-397, 2024 WL 323381, *2-3 (M.D. Fla. Jan. 29, 2024) (where two state agency psychological consultants, whom the ALJ found "partially persuasive," opined that the plaintiff had a moderate limitation in accepting instructions and responding appropriately to criticism from supervisors, the court found that limiting the plaintiff to occasional contact with coworkers and the public, to remembering simple information, and to performing simple routine work tasks was consistent with a limitation on interacting with supervisors); *Sheldon v. Comm'r of Soc. Sec.*, No. 8:15-CV-1831, 2016 WL 4120444, *3 (M.D. Fla. Aug. 3, 2016) ("[A]lthough the ALJ did not specifically include a limitation regarding the level of interaction

28

with supervisors, the ALJ's hypothetical and RFC sufficiently accounts for Plaintiff's moderate limitations in social functioning by limiting Plaintiff to no more than occasional interaction with crowds, the public, and co-workers."); *Lane*, 643 F. App'x at 768-69; *Scott C.*, 2021 WL 2682276, at *4-5; *Crisco*, 2023 WL 2142681, *7-9; *Shorey*, 2012 WL 3475790 at *6; *Wilson*, 2020 WL 6293132 at *4.[7]

In sum, for the collective reasons discussed above, the court concludes that the ALJ's RFC determination was supported by substantial evidence. "[T]here is no requirement an ALJ adopt every limitation from persuasive opinions," and "'there is no legal requirement that an ALJ explain each limitation or restriction he adopts or fails to adopt' from a persuasive opinion." *Donnie T. v. Bisignano*, No. 2:24-CV-229, 2025 WL 2655447, *7 (M.D. Ala. Sept. 16, 2025) (citation omitted); *Normand v. Kijakazi*, No. 1:23-CV-337, 2023 WL 8719445, *4 (M.D. Ala. Dec. 18, 2023). "A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012). Further, based on the case authority cited, even if the ALJ failed to clearly address aspects of Dr. Laboy's opinion, any such error was harmless. *Shaw*, 392 F. App'x at 687 n.1; *Williams*, 532 F. Supp. 3d at 1233 n.5; *Lane*, 643 F. App'x at 768-69; *Scott C.*, 2021 WL 2682276, at *4-5.

Plaintiff "'must do more than point to evidence in the record that supports h[is] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion.'" *Thompkins*

---

[7] The ALJ's hypothetical to the VE contained all the limitations set forth in Plaintiff's RFC. (Tr. 15, 74). "For a VE's testimony to constitute substantial evidence, the ALJ must hypothetically inquire as to all of the claimant's impairments, and the ALJ is required to present the VE with all of the claimant's limitations, both physical and mental, in order for the VE's testimony to constitute substantial evidence supporting the ALJ's decision." *Stacey L. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-CV-0570, 2022 WL 17078641, *11 (N.D. Ga. Mar. 9, 2022) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).

*v. Kijakazi*, No. 2:21-CV-216, 2022 WL 2517185, *7 (M.D. Ala. July 6, 2022) (quoting *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam)) (brackets added). "The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence." *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, *1 (S.D. Ga. June 9, 2015) (citing *Crawford*, 363 F.3d at 1158-59); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion.  The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted).  Put most simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679, *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

## V.    Conclusion

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment (Doc. 11) be **DENIED,** that the Commissioner's motion for summary judgment (Doc. 15) be **GRANTED,** and that the Commissioner's decision be **AFFIRMED**.

It is **ORDERED** that all objections to this Recommendation must be filed no later than **March 3, 2026**. An objecting party must identify the specific portion(s) of all factual findings/ legal conclusions to which objection is made and must describe in detail the basis for each objection. Frivolous, conclusive, or general objections will not be considered.

After receiving objections, the District Judge will conduct a *de novo* review of the challenged findings and recommendations. The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings. *See* 28 U.S.C. § 636(b)(1)(C). A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations. Unobjected-to factual and legal conclusions may be reviewed only for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 17th day of February 2026.

_____

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**

31